Filed 1/26/26  P. v. Richardson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAMANTHA RICHARDSON,<br><br>Defendant and Appellant. | B323293<br><br>(Los Angeles County<br>Super. Ct. No. BA456270) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mildred Escobedo, Judge.  Affirmed with modifications.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant Samantha Richardson guilty of second degree murder and second degree robbery.

Richardson raises two claims of trial error. With respect to her murder conviction, Richardson contends the trial court erred by failing to instruct on the lesser included offense of voluntary manslaughter based on heat of passion. We reject that challenge because no evidence or inferences from the evidence at trial support such an instruction. Her second claim is that the trial court failed to calculate her presentence custody credits correctly. We agree Richardson is entitled to three additional days of presentence custody credit. We direct the trial court to prepare an amended abstract of judgment to reflect the correct amount of credit and transmit it to the California Department of Corrections and Rehabilitation. We affirm the judgment of conviction as modified.

## FACTUAL AND PROCEDURAL SUMMARY

1. ***The charges, convictions, and sentencing***

On February 14, 2019, Richardson was charged with one count of first degree murder in violation of Penal Code [1] section 187, subdivision (a), and one count of second degree robbery in violation of section 211. The Information alleged special circumstances in that the murder occurred in the course of a robbery within the meaning of section 190.2, subdivision (a)(17). The Information further alleged Richardson personally used a deadly weapon in the commission of the murder within the meaning of section 12022, subdivision b)(1).

On June 22, 2022, a jury acquitted Richardson of first degree murder and convicted her of second degree murder and second degree robbery. The jury found true the allegation that Richardson

---

[1] All undesignated statutory references are to the Penal Code.

used a deadly weapon, a knife, in the commission of the murder. On August 10, 2022, the trial court sentenced Richardson to 15 years to life on the murder conviction plus one year for use of the knife plus two years for the robbery conviction. Richardson timely appealed.

2. *Evidence at trial*

On April 3, 2017 around 9:00 p.m., Lisa White went to the Four Corners Market near 5th and San Pedro streets in downtown Los Angeles to submit paperwork for a job opening. Richardson and Danile Bookman were in the store. Bookman spoke rudely and aggressively to White. They exchanged words. White tried to leave the store, but Bookman tried to block her exit. Bookman stepped behind White, "snatched" her hair from behind, and took White to the ground. Bookman pulled at White's purse, trying to take it. Bookman said, "[B]itch, you gonna give me this purse." White got up and ran out to the street.

White was walking fast, then running when she saw both women following her. White was headed for her uncle's truck that was across the street waiting for her, but both women knocked her to the ground again in the middle of the street. Richardson repeatedly kicked her in her head and side telling her to let go of the purse. Bookman was on top of her. The women struggled for 10 to 20 minutes in the middle of the street, with Bookman still trying to take White's purse, which was strapped across her body.

Driving a white truck, Luis Nuno stopped at a red light at the scene, saw the altercation in the street, rolled down his window, and told the women to leave White alone. Different witnesses recounted his statements at trial as "Hey, you got to stop that. That aint' right. Get off of her. Leave her alone"; "Please stop. Don't do that. You guys stop beating on her. Stop doing that. Hey"; "[W]hat is going on[?] Like stop. Stop"; "[H]ey, hey, stop."

3

Richardson disengaged from the fight and walked over to Nuno's truck and said, "You need to mind your business."  She raised her arm in a swinging motion as she approached his window, looking angry or irritated.  She put her hand through the open window.  According to the investigating officers' analysis of his wounds, Nuno was stabbed multiple times through his open window by someone outside the truck.

After the stabbing, Nuno quickly tried to roll up his window, said something White could not recall, and drove away.  Another bystander crossing the street yelled that the police were coming; Richardson and Bookman ran in different directions, Bookman with White's purse.

Nuno drove two blocks before abruptly stopping his truck.  He stumbled out of the truck and fell on the ground between the truck's door and the rear tire.  Blood was on the car's exterior and interior and pooling around his body.  He was taken to a hospital where he later died from a stab wound that punctured his aorta. Richardson was detained at the scene and identified by White as her assailant.

When interviewed about the events that night, appellant told Detective Kasie Chavez she was merely present for the robbery and attack on Nuno.  When Chavez falsely told her Nuno had filmed her on his phone, Richardson said she was angry at Nuno for not helping her get Bookman off White, whom she was trying to help.  Richardson told Detective Chavez she never touched the truck, but she had tried to hit Nuno because she was aggravated.  Richardson stated that Bookman and White were "on each other.  So he wasn't talking about me get[ting] off of her because I wasn't on her."  When Detective Chavez asked if Nuno ever got out of the truck, Richardson said, "No, he would have gotten blood on me."

4

While Bookman and Richardson were in custody together, their conversation was recorded. Bookman complained she had been charged with murder, even though she did not stab anyone. Richardson replied, "I know." Bookman recalled that when she learned the police were coming, she tried to get Richardson to run, but Richardson refused, replying "[F]uck you. Fuck the police and fuck this bitch." Bookman told Richardson the police said Nuno got out of the car and was stabbed. Richardson replied that the police were lying because the man who drove up to talk to them never got out of the car. Richardson said she was arguing with "the dude" and had lost sight of Bookman. They discussed hitting White and Richardson said, "You know, I hit her because I did not care."

### 3. *Lesser Included Offense Instruction*

Richardson asked the trial court to instruct the jury on the lesser included offense of voluntary manslaughter because "we're having a provocation issue, in the heat of the moment a reaction to something that may or may not have been occurring. [¶] It doesn't look—appear that anyone had time to reflect to consider what was done. It was a knee jerk reaction . . . in the hea[t] of an altercation, in the heat of a moment. [¶] And there was provocation because there was a lot of yelling and screaming going back and forth about—to do one thing or another. And under that excitement, I think there is some evidence that this may have been a reaction to that moment in the heat of the passion." The court responded, "I don't see substantial facts that reflect that there could be a heat of passion with somebody who is in a car, away from the incident, doesn't step out of the car at all. It's just, according to the facts that we received, something to the effect of, 'Hey, leave her alone,' which other individuals were already saying because we heard that on the 9-1-1 calls. [¶] . . . [¶] But the person drives up and says, 'Hey, stop' because they're still in the car—or they are in the middle of the

5

street fighting.  I do not see how in the world that can be a heat of passion."  The trial court consulted CALCRIM 570, the instruction on voluntary manslaughter, and pointed out that the instruction required substantial supporting factual evidence to merit consideration by the jury, citing *People v. Breverman* (1998) 19 Cal.4th 142 (*Breverman*).  The trial court stated that the evidence of provocation was "nonexistent" because Nuno was "simply driving by, sees this conduct in the middle of the street, doesn't get out of his car, doesn't know him from Adam, and he simply says, 'Stop it.'  He's a concerned citizen, sees someone being beaten and he says, 'Stop it.' [¶] And Miss Richardson allegedly goes to him and stabs him.  He leaves, and 200 yards later, or however far the distance, he dies because he's been stabbed in the heart. [¶] I don't see it at all.  The Court will deny it."

## DISCUSSION

Based on our independent review of the record, we conclude the evidence did not warrant a voluntary manslaughter instruction. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218 [the independent standard of review applies to the failure of the trial court to instruct on a lesser included offense].)

Voluntary manslaughter is a lesser included offense of murder.  The difference is that murder includes, but manslaughter lacks, the element of malice.  (*Breverman, supra,* 19 Cal.4th at p. 154 (*Breverman*), disapproved on another ground in *People v. Schuller* (2023) 15 Cal.5th 237, 254–260.  "A trial court has an independent obligation to instruct the jury on all lesser included offenses the evidence warrants, even against the defense's wishes. Such instructions are required when, *but only when*, a jury could reasonably conclude that the defendant committed the lesser offense but not the greater one." (*People v. Hardy* (2018) 5 Cal.5th 56, 98, italics added.)  The Supreme Court explained this sua sponte

6

duty "protects both the defendant and the prosecution against a verdict contrary to the evidence, regardless of the parties' own perceptions of their strongest lines of attack or defense. The rule's purpose is not simply to guarantee *some* plausible third choice between conviction of the charged offense or acquittal, but to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence." (*Breverman,* at p. 161.) Indeed, in a murder prosecution, a court's duty to instruct sua sponte "includes the obligation to instruct on every supportable theory of the lesser included offense of voluntary manslaughter, not merely the theory or theories which have the strongest evidentiary support, or on which the defendant has openly relied." (*Id.* at p. 149.)

In assessing whether substantial evidence exists in this context, "a court determines only its bare legal sufficiency, not its weight." (*Breverman*, *supra*, 19 Cal.4th. at p. 177.) "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*People v. Simon* (2016) 1 Cal.5th 98, 132.) Doubts about whether an instruction is warranted should be resolved in favor of the accused. (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

To establish voluntary manslaughter under a heat of passion theory, it must be shown that the defendant was provoked; as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured their reasoning or judgment; and the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is from passion rather than from judgment. (CALCRIM No. 570.)

Heat of passion has both an objective and subjective component. Subjectively, the accused must be shown to have killed while under " 'the actual influence of a strong passion.' " (*People v.*

*Moye* (2009) 47 Cal.4th 537, 550 (*Moye*).) "Heat of passion arises when ' at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.' " (*People v. Barton* (1995) 12 Cal.4th 186, 201.)

The objective component requires, among other things, that the provocation be such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. (*Moye, supra*, 47 Cal.4th at pp. 549–550.) The provocation must be caused by the victim or reasonably believed by the accused to have been engaged in by the victim. (*Ibid*.)

Richardson argues that she stabbed Nuno in a heat of passion after he provoked her. The evidence here, considered in its totality, could not support a reasonable juror's conclusion that Nuno provoked Richardson or that she acted reasonably in stabbing him if she was provoked.

As to the objective element of reasonable provocation, Richardson contends that Nuno must have said or done something to provoke her to act so violently during their brief interaction with each other at the truck cab's window. However, "must have" without supporting factual evidence is not a ground upon which a lesser included instruction may be given. The instruction requires substantial evidence, not speculation. Richardson points to nothing but speculation in support of her argument that the instruction should have been given. There is no evidence whatsoever that Nuno acted provocatively. As the trial court pointed out, Nuno, from the cab of his truck, simply admonished the women to stop the assault. He did not get out of the truck, approach or touch the assailants, verbally insult or taunt them, display a weapon, call the

police, move his truck in a threatening manner, or attempt to physically intervene in any way.

Richardson contends she was aggravated at Nuno for not stopping the fight because she, too, wanted to help the victim Lisa White. She appears to contend she was "irritated" that Nuno did not stop the assault. Richardson's statement that "I hit [White] because I did not care" belies this contention. Nevertheless, even if it were true that Richardson was irritated, Nuno's failure to physically intervene, coupled with his mere verbal admonitions, does not amount to reasonable provocation under any turn of events.

Because there is no evidence of provocation in the record, it is difficult to subjectively parse Richardson's response to whatever Nuno did or said. However, the infliction of multiple stab wounds on a person who observes a fight and tells the assailants to stop their assault is not a reasonable response by any stretch of the imagination, even if, as Richardson told Bookman, she was arguing with "the dude." If their argument were heated, a completely speculative contention, verbal taunts and insults are not sufficient to excuse an otherwise murderous killing. (See *People v. Manriquez* (2005) 37 Cal.4th 547, 586 [taunts and insults insufficient to warrant instruction]; *People v. Najera* (2006) 138 Cal.App.4th 212, 226 & fn. 2 [physical pushing and use of the term "faggot" insufficient to warrant instruction].) Because we don't know what, if anything, Richardson and Nuno said to each other at the cab of the truck, we cannot infer from the evidence that Richardson's violent stabbing response was the product of an ordinary person's inability to reflect on their actions. (See *Moye, supra*, 47 Cal.4th at p. 550.) If Richardson was provoked or acting in the heat of passion because of White's staunch resistance to the robbery, that heat of passion could not then be directed at Nuno to warrant a voluntary

9

manslaughter instruction because the victim must be the provocateur or reasonably believed to have engaged in provocation. (*Moye, supra*, 47 Cal.4th at pp. 549–550.)

If Richardson became enraged and unable to reflect on her actions because Nuno took the side of the victim during their "argument," "[n]o case has ever suggested . . . that such predictable conduct by a resisting victim would constitute the kind of provocation sufficient to reduce a murder charge to voluntary manslaughter." (*People v. Jackson* (1980) 28 Cal.3d 264, 306, disapproved on another ground in *People v. Cromer* (2001) 24 Cal.4th 889, 901.) We agree with the People that no one can beat and rob a person in the middle of the street and when an onlooker predictably tells them to stop, be absolved of the murder of the onlooker.

Because both the subjective and objective elements of the manslaughter instruction were not supported by any evidence whatsoever, the trial court was correct in rejecting Richardson's request for a lesser included offense instruction.

Richardson also contends the judgment must be modified to accurately reflect her presentence custody credit. The People agree, as do we. At sentencing, the trial court awarded Richardson 1,952 days of actual custody credit. However, Richardson spent 1,955 days in custody before she was sentenced. She is therefore entitled to three additional days of credit. The abstract of judgment must be modified to reflect the correct amount of presentence custody credit.

## DISPOSITION

The judgment of conviction is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment to reflect the correct calculation of 1,955 days of presentence custody credit and forward a certified copy to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.